## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAD M. HOWARD, PERSONAL REPRESENTATIVE OF THE ESTATE OF WILLIAM J. HOWARD<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>Defendant. | ) Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

This is a wrongful death and medical malpractice Complaint for damages brought pursuant to the Federal Torts Claims Act by the plaintiff, Chad M. Howard, as Personal Representative of the Estate of William J. Howard. This Complaint arises from the substandard medical care and treatment rendered to the decedent, William J. Howard, by the defendant, the United States of America.

## PARTIES

**1.** The plaintiff, Chad M. Howard, is the duly appointed Personal Representative of the Estate of William J. Howard, and is a resident of Natick, Middlesex County, Massachusetts.

**2.** Pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346(b) and 2671-2680, the defendant, the United States of America, is the properly named defendant in place of its agents, servants and employees, including but not limited to, Haider Warraich, M.D., Huihong Xu, M.D., Marie Lithgow, M.D., Yun-Han Huang, M.D., Ducksoo Kim, M.D. and Jacquelyn A Quin, M.D.

**3.** At all times herein, Haider Warraich, M.D., Huihong Xu, M.D., Marie Lithgow, M.D., Yun-Han Huang, M.D., Ducksoo Kim, M.D. and Jacquelyn A Quin, M.D, were employees of VA

Boston Healthcare System, in West Roxbury, Massachusetts, which is operated by the U.S. Department of Veterans Affairs, a Federal agency within the meaning 28 U.S.C. § 2671.

## JURISDICTION AND VENUE

**4.** This matter is brought against the United States of America pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680. This Court has jurisdiction over plaintiff's claims against the United States of America pursuant to 28 U.S.C. § 1346(b).

**5.** Venue is proper pursuant to 28 U.S.C. § 1402(b), as the plaintiff resides in the Commonwealth of Massachusetts and the defendants' negligence occurred in the District of Massachusetts.

**6.** Pursuant to 28 U.S.C. §§ 1346(b), 2401(b), 2671-2680, the plaintiff's claim was presented to the U.S. Department of Veterans Affairs on or around March 19, 2024, with demand sum certain of ten million dollars ($10,000,000). The defendant, United States of America, has failed to respond for a period exceeding six months.

**7.** The plaintiff has fully complied with the provisions of 28 U.S.C. § 2675, and all statutory prerequisites to the filing of this Complaint have been satisfied.

## FACTS COMMON TO ALL COUNTS

**8.** This is a Complaint for wrongful death damages arising out of the substandard medical care and treatment rendered to the plaintiff's decedent, William J. Howard (hereinafter, "Mr. Howard"), by the United States of America. Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of its agents, servants and employees, including but not limited to Haider Warraich, M.D., Huihong Xu, M.D., Marie Lithgow, M.D., Yun-Han Huang, M.D., Ducksoo Kim, M.D. Jacquelyn A Quin, M.D, of VA Boston Healthcare

System, in West Roxbury, Massachusetts, a federally funded health clinic operated by the U.S. Department of Veterans Affairs.

9.      The plaintiff did not discover, nor could he have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after May 26, 2023, which is less than two years from the presentment of his administrative claim on March 19, 2024.

10.     All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq., and 42 U.S.C. § 233(a) have been satisfied.

11.     On May 26, 2023, William Howard, age 74, died of esophageal adenocarcinoma in the setting of metastatic lung cancer (SCCE).  Mr. Howard suffered a significant 11-month delay in treatment of lung cancer, and delay in the diagnosis and treatment of esophageal cancer, leading to his premature and preventable death as a direct result of the substandard care and treatment rendered to him by VA Boston Healthcare providers including but not limited to, Haider Warraich, M.D., Huihong Xu, M.D., Marie Lithgow, M.D., Yun-Han Huang, M.D., Ducksoo Kim, M.D. and Jacquelyn A Quin, M.D.

12.     In 2021, Mr. Howard's past medical history included severe aortic stenosis, post-traumatic stress disorder (PTSD), controlled hypertension, hyperlipidemia, heart failure with preserved EF, anxiety, carotid artery stenosis, Barrett's esophagus (BE) with esophagitis, arthritis, and chronic pain.  His smoking history included half a pack per day since he was a teenager.  There was no history of cancer in his family.

13.     On September 9, 2021, Mr. Howard was admitted to the VA Hospital (VA Boston Healthcare System) with complaints of shortness of breath (SOB) which was ongoing for weeks, in the setting of acute decompensated heart failure.  He began receiving ongoing diuresis.  He was

seen by attending internist/cardiologist, Haider Warraich, M.D., and resident, Joanne Hsu, M.D. Mr. Howard responded well to diuresis and underwent a cardiac MRI that was negative for amyloidosis. A cardiac surgery consult was requested for surgical evaluation for severe aortic stenosis. Cardiac surgeon, Jacquelyn Quin, M.D., recommended further workup and possible transcatheter aortic valve replacement (TAVR).

**14.** On September 15, 2021, Mr. Howard underwent a CT angiogram of the abdomen/pelvis which demonstrated no evidence of thoracic or abdominal aortic aneurysm or dissection. However, the CTA revealed an incidental finding of a 1.2 cm nodule within the left upper lobe (LUL) adjacent to the interlobar fissure with 2-3 mm satellite nodules. Further evaluation with a PET/CT was recommended as malignancy was a consideration. Radiology findings were communicated to Dr. Hsu. Dr. Warraich noted that Mr. Howard was found to have multiple abnormalities on cross sectional imaging concerning for malignancy and that the focus would be on diagnosing and working up these anomalies.

**15.** A whole-body PET/CT scan dated September 16, 2021, redemonstrated a 1.1 cm left upper lobe nodule with uptake above the mediastinal blood pool, concerning for malignancy. Radiology noted that there was no FDG avid lymphadenopathy, and no evidence of distant metastasis. A biopsy was recommended for further evaluation. On September 17, 2021, Dr. Warraich noted that Mr. Howard was stable from a cardiovascular perspective and was undergoing workup for likely pulmonary malignancy noted on imaging and that he needed a tissue diagnosis.

**16.** Resident physicians, Yun-Hun Huang, M.D. and Joanne Hsu, M.D., spoke with Mr. Howard concerning the need for biopsy, and due to scheduling issues, Mr. Howard was discharged by Dr. Huang on September 18, 2021, with a plan to return for biopsy on an outpatient basis. Dr.

Warraich agreed to follow Mr. Howard for VNA orders until he established care with primary care physician on September 27, 2021.

17.    On October 28, 2021, Mr. Howard underwent a core needle lung biopsy requested by Dr. Warraich and Dr. Huang.  The biopsy was performed by interventional radiologist, Ducksoo Kim, M.D.

18.    On November 2, 2021, pathology from the left upper lobe (LUL) biopsy resulted positive for malignant cells, consistent with non-small cell carcinoma (NSSC), and favoring squamous cell carcinoma.  Tumor cells were positive for pancytokeratin AE1/3, CK7 (patchy), P40 and CK5/6.

19.    On November 2, 2021, pathology results were reviewed by pathologists, Marie Lithgow, M.D. and Huihong Xu, M.D.  Dr. Xu's report provides that "Dr. Haider Warraich was notified [of the positive pathology results] at 13:45 on 11/2/2021."  Dr. Xu signed off on the pathology report on November 2, 2021.  A copy of the report was provided to Dr. Huang and Dr. Warraich.

20.    On November 4, 2021, radiologist Ducksoo Kim, M.D., signed off on the pathology report. Neither Dr. Warraich nor Dr. Huang acknowledged receipt of the pathology report.  Despite reportedly being informed of the positive pathology results, Dr. Warraich, Dr. Huang and Dr. Kim failed to inform Mr. Howard of the results and failed to take steps to ensure that Mr. Howard was informed of his positive pathology and referred to oncology.

21.    From November 2021 to October 2022, VA providers were periodically in contact with Mr. Howard about prescription refills, however, Mr. Howard was never informed of his pathology results positive for lung cancer.  No efforts were made on behalf of the VA providers to contact him with regard to his results.

22.    On January 20, 2022, Dr. Quin authored an addendum to a September 14, 2021, cardio thoracic consult note indicating that she reviewed Mr. Howard's chart for progress.  She wrote,

"Note dx of squamous cell malignancy; … seems to be superseding his aortic issues. Will sign off from cardiac surgery." Despite chart review which indicated that there had been no appointments relative to pathology positive for lung cancer, Dr. Quin failed to take steps to ensure Mr. Howard was informed, or that his physicians were aware and had referred him to oncology.

23.    On October 3, 2022, Mr. Howard presented to the VA emergency department with complaints of chronic pain, shortness of breath, leg swelling, and generalized weakness ongoing for a year. He had been suffering from leg swelling with oozing and could barely walk without shortness of breath and had been sleeping on his side for relief. The emergency department noted diagnostic imaging and labs were consistent with CHF. He was admitted to telemetry in cardiology but it was noted that he may have broader medical issues, and providers were requested to refer to results of the fine-needle aspirate performed in November 2021.

24.    On October 12, 2022, Mr. Howard underwent a PET/CT of the whole body for staging. The PET/CT demonstrated local progression of the LUL squamous cell carcinoma with increase in size and metabolic activity of the nodule, now measuring 1.9 cm with SUV max of 5.4. Also noted was a new borderline enlarged pre-vascular node with mild activity demonstrating an SUV max of 2.2, with metastatic disease as a consideration. Additionally, there was increased activity within the mid/distal esophagus just below the level of the carina.

25.    On October 14, 2022, an EGD was performed and resulted abnormal. The EGD demonstrated a long segment Barrett's esophagus (BE) with nodular masses protruding from 10 cm segment concerning for possible malignancy, which was biopsied. (Of note, last EGD was obtained in 2014, and at that time the BE was noted to be suspicious for dysplasia. The avid lesion correlates to the area of previously known concern.)

26.    On October 17, 2022, the esophageal biopsy results returned, poorly differentiated adenocarcinoma arising from background of BE with high-grade dysplasia. Hematology/oncology recommended an endoscopic resection for accurate staging of the esophageal cancer. They would wait for the results of the second biopsy of the left lung. If the biopsy was consistent with adenocarcinoma there would be a question as to whether this was an esophageal cancer primary with metastatic disease. If the LUL lung lesion was SCC they would need to proceed with staging for the esophageal cancer. Oncology notes in an addendum, "patient seen and discussed during rounds… this is likely a situation of two synchronous neoplasms in a patient with a limited performance status."

27.    To a reasonable degree of medical certainty, Mr. Howard had early localized lung cancer in October 2021 which grew and spread during the course of the following year, resulting in metastatic disease. During the same period, Mr. Howard had developed a local esophageal cancer.

28.    On October 18, 2022, Mr. Howard underwent a repeat LUL lung biopsy. The biopsy was aborted due to his discomfort and subsequent finding of a LUL pneumothorax which resolved after placement of a LUL chest tube.

29.    On October 19, 2022, hematology/oncology was consulted. Based on the esophageal biopsy results, oncology recommended an EUS and endoscopic resection for further staging. At that time, Mr. Howard had just suffered the pneumothorax and was not amenable to further procedures.

30.    On October 21, 2022, an "institutional disclosure of an adverse event" conference was held between Mr. Howard, his sons, and VA staff including: Chief of Staff, Michael Charness, M.D., Chief of Cardiology, Scott Kinlay, M.D., Leander Branham, M.D., and Risk manager, Monique Machado. During the conference VA staff apologized to Mr. Howard and his family for the

communication issues leading to the delay of Mr. Howard's lung cancer treatment. The VA offered expedited consultations, arrangements for second opinions and informed the family an institutional investigation was underway.

31.     On October 24, 2022, Mr. Howard was discharged from the VA Hospital on diuretics for decompensated heart failure, oxygen via nasal cannula, and an indwelling foley catheter for urinary retention. He would follow up with oncology on an outpatient basis at the JP VA for further treatment management.

32.     On November 2, 2022, Mr. Howard had an outpatient hematology/oncology visit. During the visit, Mr. Howard expressed concern over his diagnosis and reported to staff, "he values living as long as he can." During discussion of treatment options, oncology noted that Mr. Howard wanted treatment for his cancers if they are curable, but was not sure he wanted to go through chemotherapy and/or radiation if the cancers were not curable.

33.     In order to stage his esophageal carcinoma a repeat EGD with EUS and lymph node sampling was noted to be required. Oncology noted that per his PET scan, Mr. Howard did not have metastatic disease. Oncology did not think Mr. Howard would be a good candidate for chemotherapy or a surgical esophagectomy, and would not tolerate chemoradiation. A repeat EGD would demonstrate if he could potentially be a candidate for endoscopic resection debulking if the depth of the invasion was limited.

34.     With respect to the lung cancer, oncology noted that obtaining a full staging with bronch and EBUS would be ideal but providers were unsure if Mr. Howard would be able to tolerate the procedure. A repeat biopsy would not be possible due to the recent pneumothorax. Radiation could be considered but it was felt it may be in vain without full lymph node staging.

**35.**    On November 3, 2022, 11/3/22, gastroenterology contacted Mr. Howard and he was amenable to scheduling the procedures (EGD and EUS) and proceed with testing.  On November 7, 2022, Mr. Howard informed the endovascular nurse that he had decided to decline further testing and staging.   Orders were cancelled and gastroenterology deferred to oncology for further treatment management.

**36.**    On November 6, 2022, a tumor board consult was held.  The board wanted clarification from gastroenterology as to the EGD results, i.e., location of the fragment containing the cancer. They believed it was the distal esophagus.  The board planned to revisit the case after clarification.

**37.**    On May 26, 2023, Mr. Howard passed away at home.  His cause of death was esophageal carcinoma with metastatic lung SCCE as a contributing factor.

**38.**    Timely and efficient communication of abnormal laboratory test results including pathology findings, such as an unexpected finding of cancer on lung biopsy, is an essential part of managed care and patient safety.  Effective communication of abnormal findings, requires multiple parties within the health care system working together to ensure that the results are properly and timely communicated, received, acknowledged and acted upon.   The role of the pathologist includes providing the information to the treating/ordering physician, who will then communicate the results to the patient.  If an abnormal test result remains unacknowledged after a reasonable period, it should be forwarded or escalated to an alternate responsible provider.

**39.**    Certain pathology test results require the pathologist to urgently communicate the results verbally to the ordering provider, outside the normal parameters for the delivery of the pathology report.  An unexpected finding of malignancy on pathology is one such scenario that warrants urgent verbal communication since there has been no known diagnosis or multidisciplinary meeting discussion scheduled, and there is risk that the histopathology report may be missed by

the ordering physician. It is expected that all pathology providers have systems in place to timely and properly communicate results to the ordering providers, and ensure that the results are received and acknowledged by the provider.

40.    Similarly, upon receipt of pathology results positive for an unexpected malignancy, the treating or ordering provider must then timely and effectively communicate the abnormal findings to the patient. It is important for patients to be notified of life-threatening test results through verbal means, preferable in person. It is expected that all physicians including cardio thoracic surgeons and have systems in place to timely and properly communicate abnormal results to the patient. Failure to communicate unexpected findings of cancer on biopsy in a timely and effective manner will likely result in patient harm.

41.    The prognosis of a patient diagnosed with lung and/or esophageal cancer largely depends upon the extent of the disease at the time of diagnosis. If detected and diagnosed at an early stage, lung and esophageal cancers are treatable and amenable to cure. However, if the cancers are not diagnosed and treated for a significant period, and allowed to grow and spread, the patient's cancer becomes more difficult or impossible to surgically remove, the treatment options become more aggressive, the patient has an overall worsened prognosis, decreased chance of long-term survival, and more likely than not, will suffer a premature and preventable death, as in the case of William Howard.

42.    The accepted standard of care of the average qualified pathologist in Massachusetts in 2021 to present, interpreting and reporting on lung biopsy specimens positive for lung cancer, as in Mr. Howard's case, requires pathology to 1) urgently and verbally notify the ordering physician of the biopsy results; 2) provide the ordering provider and other pertinent treaters with a copy of the

report; and 3) when utilizing a computer system which tracks acknowledgement of receipt, timely check the system to ensure that the report has been received.

43.    To a reasonable degree of medical certainty, the care and treatment provided to Mr. Howard by pathologist, Huihong Xu, M.D., was substandard when Dr. Xu failed to timely ensure, confirm, and make certain that the written report was received by Dr. Huang and Dr. Warraich, when neither acknowledged receipt.

44.    To a reasonable degree of medical certainty, as a direct result of Dr. Xu's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Xu ensured that his written report was received by Dr. Huang and Dr. Warraich, Mr. Howard would have been timely informed of his pathology results positive for lung cancer, Mr. Howard would have been diagnosed and treated for an early stage lung cancer as early as November 2021, his early stage esophageal cancer would have been diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

45.    To a reasonable degree of medical certainty, the care and treatment provided to Mr. Howard by pathologist, Marie Lithgow, M.D., was substandard when Dr. Lithgow failed to timely ensure, confirm, and make certain that the pathology results were received by Dr. Huang and Dr. Warraich, when neither acknowledged receipt of the report.

46.    To a reasonable degree of medical certainty, as a direct result of Dr. Lithgow's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Lithgow ensured that the pathology report was received by Dr. Huang and Dr. Warraich, Mr. Howard would have been timely informed of his pathology results positive for lung cancer, Mr. Howard would have been diagnosed

and treated for an early stage lung cancer as early as November 2021, his early stage esophageal cancer would have been diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

47.    The accepted standard of care of the average qualified attending internist / cardiologist, and resident internist in Massachusetts in 2021 to present, treating a patient who underwent lung biopsy, requires that the physician upon receipt of the abnormal unexpected pathology findings (verbally and/or written) which are positive for lung cancer (as in Mr. Howard's case),  to 1) have the necessary systems in place to ensure that the patient is timely informed of the results, 2) timely review the written pathology report, and 3) inform the patient that he has lung cancer. Furthermore, if the ordering physician does not receive the results in a timely manner, he/she must follow up with pathology.

48.    To a reasonable degree of medical certainty, the care and treatment provided to Mr. Howard by Haider Warraich, M.D. was substandard when Dr. Warraich was informed by Dr. Xu of the positive pathology and was provided with a copy of the pathology report, and failed to  1) have the necessary system in place to ensure that Mr. Howard was timely informed of the biopsy results positive for lung cancer; 2) failed to review the written pathology report in November 2021, and 3) failed to inform Mr. Howard that he had lung cancer.

49.    To a reasonable degree of medical certainty, as a direct result of Dr. Warraich's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Warraich complied with the accepted standard of care, he would have informed Mr. Howard on an urgent basis of his pathology results positive for lung cancer, Mr. Howard would have been diagnosed and treated for an early-stage lung cancer as early as November 2021, his early-stage esophageal cancer would have been

diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

50.     To a reasonable degree of medical certainty, the care and treatment provided to Mr. Howard by internal medicine resident, Dr. Yun- Han Huang was substandard when Dr. Huang was provided with a copy of Mr. Howard's pathology report and failed to 1) have the necessary system in place to ensure that Mr. Howard was timely informed of the biopsy results positive for lung cancer; 2) failed to review Mr. Howard's pathology report in November 2021; and 3) failed to inform him that he had lung cancer.

51.     To a reasonable degree of medical certainty, as a direct result of Dr. Huang's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Huang complied with the accepted standard of care, he would have informed Mr. Howard on an urgent basis of his pathology results positive for lung cancer, Mr. Howard would have been diagnosed and treated for an early-stage lung cancer as early as November 2021, his early-stage esophageal cancer would have been diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

52.     The accepted standard of care of the average qualified cardiothoracic surgeon in Massachusetts in 2021 to present, consulting for possible cardiac surgery on a patient who underwent lung biopsy, who through record review becomes aware of pathology positive for lung cancer and indicates that they will signing off due to such diagnosis requires the physician to 1) recognize and appreciate that there has been no action taken on the pathology; 2) verbally communicate with treating providers to ensure that the patient has been informed of the positive

pathology, and 3) inform the patient that you are no longer considering cardiac surgery or following their care, and the reasons for such.

53.    To a reasonable degree of medical certainty, Dr. Quin's care of Mr. Howard was substandard when she became aware of Mr. Howard's pathology positive for lung cancer and failed to 1) recognize and appreciate that there has been no action taken on the pathology; 2) verbally communicate with treating providers to ensure that Mr. Howard had been informed of the positive pathology, and 3) inform Mr. Howard that she was no longer considering cardiac surgery or following his care, and the reasons for such.

54.    To a reasonable degree of medical certainty, as a direct result of Dr. Quin's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Quin provided proper care, she would have ensured that Mr. Howard had been informed that he had cancer, and that the pathology was being acted upon, Mr. Howard would have been diagnosed and treated for an early-stage lung cancer as early as January 2021, his early-stage esophageal cancer would have been diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

55.    The accepted standard of care of the average qualified interventional radiologist in Massachusetts in 2021 to the present performing a lung biopsy who signs off on the pathology report positive for lung cancer, requires the radiologist to take steps to ensure that the patient is informed of the positive pathology findings.

56.    To a reasonable degree of medical certainty, the care and treatment provided to Mr. Howard by interventional radiologist Dr. Kim was substandard when Dr. Kim, signed off on the pathology

report positive for lung cancer and failed to take steps to ensure that Mr. Howard was informed of the biopsy results.

57.    To a reasonable degree of medical certainty, as a direct result of Dr. Kim's substandard care, Mr. Howard's lung and esophageal cancers went untreated resulting in an incurable disease process, and his premature and preventable death.  Had Dr. Kim ensured that Mr. Howard was informed of the positive pathology from the biopsy he performed, Mr. Howard would have been timely informed of his pathology results positive for lung cancer, Mr. Howard would have been diagnosed and treated for an early stage lung cancer as early as November 2021, his early stage esophageal cancer would have been diagnosed and treated, and more likely than not, he would not have suffered a preventable and premature death on May 26, 2023.

## <u>COUNT I</u>

58.    The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

59.    The plaintiff, Chad M. Howard, is the duly appointed Personal Representative of the Estate of William J. Howard and is a resident of Natick, Middlesex County, Massachusetts.

60.    The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §§ 1346(b), 2671, and is the properly named defendant in place of its agents, servants and employees, including but not limited to, Haider J. Warraich, M.D., Jacquelyn A. Quin, M.D., Yun-Hun Huang, M.D., Huihong Xu, M.D., Ducksoo Kim, M.D., and Marie Lithow, M.D., (collectively, the "VA Providers") of VA Boston Healthcare System, located at 1400 VFW Parkway, West Roxbury, in Suffolk County, Massachusetts.

61.    Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

62.    All statutory conditions precedent to filing suit have been met.

**63.**    This action is brought to recover for the wrongful death of William J. Howard for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346, 2671 et seq., and M.G.L. c. 229 §1 et seq.

**64.**    At all times relevant to this complaint, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's decedent's condition on or about November 2021 through October 2022.

**65.**    On or about November 2021 through October 2022, the plaintiff's decedent submitted himself to the care and treatment of the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on May 26, 2023.

**66.**    The death of William J. Howard and the damage to his estate, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, the United States of America, by its agents, servants, or employees, including, but not limited to the following:

    a.    Defendant's misrepresentations to the plaintiff's decedent that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's decedent's medical condition on or about November 2021 through October 2022;

    b.    Defendant's failure to adequately and properly diagnose the plaintiff's decedent's medical condition on or about November 2021 through October 2022, and its failure to prescribe proper and timely treatment for said condition;

    c.    Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff's decedent, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and

failure to properly and skillfully provide the plaintiff's decedent with acceptable medical and diagnostic services;

d.  Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

e.  Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's decedent's condition and failure to inform and to warn about the treatment of said condition; and

f.  Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

67.  The plaintiff did not discover, nor could he have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after May 26, 2023, which is less than two years from the presentment of his administrative claim on March 19, 2024.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## **COUNT II**

68.  The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

69.  This action is brought to recover for the conscious pain and suffering of the decedent, William J. Howard.

70.  As the direct and proximate result of the carelessness and negligence of the defendant, the United States of America, by its agents, servants, or employees, the decedent, William J. Howard, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, in an amount to be determined by a jury, together with interest and costs.

## COUNT III

71.    The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

72.    The plaintiff, Chad M. Howard, is the duly appointed Personal Representative of the Estate of William J. Howard and is a resident of Natick, Middlesex County, Massachusetts.

73.    The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §§ 1346(b), 2671, and is the properly named defendant in place of its agents, servants and employees, including but not limited to, Haider J. Warraich, M.D., Jacquelyn A. Quin, M.D., Yun-Hun Huang, M.D., Huihong Xu, M.D., Ducksoo Kim, M.D., and Marie Lithow, M.D., (collectively, the "VA Providers") of VA Boston Healthcare System, located at 1400 VFW Parkway, West Roxbury, in Suffolk County, Massachusetts.

74.    Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

75.    All statutory conditions precedent to filing suit have been met.

76.    This action is brought to recover for the wrongful death of William J. Howard for the benefit of his next of kin, pursuant to 28 U.S.C. §§ 1346, 2671 et seq., and M.G.L. c. 229 §1 et seq.

77.    At all times relevant to this complaint, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff's decedent that it was knowledgeable, competent, and qualified to

diagnose and treat the plaintiff's decedent's condition on or about November 2021 through October 2022.

**78.**     On or about November 2021 through October 2022, the plaintiff's decedent submitted himself to the care and treatment of the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, who negligently, carelessly, and without regard for the plaintiff's decedent's health and well-being, treated the plaintiff's decedent in a manner resulting in the plaintiff's decedent's death on May 26, 2023.

**79.**     The death of William J. Howard and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, or by the gross negligence of the defendant on or about November 2021 through October 2022.

**80.**     The plaintiff did not discover, nor could he have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after May 26, 2023, which is less than two years from the presentment of his administrative claim on March 19, 2024.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## COUNT IV

**81.**     The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

82.     This action is brought to recover for the conscious pain and suffering of the decedent, William J. Howard.

83.     As the direct and proximate result of the malicious, willful, wanton or reckless conduct of the defendant, the United States of America, by its agents, servants, or employees, the decedent, William J. Howard, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, for the above-described wrongful death and damage to the estate, together with punitive damages, interest and costs.

## COUNT V

84.     The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

85.     On or about November 2021 through October 2022, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, contracted with the plaintiff's decedent to provide professional services related to the plaintiff's decedent's medical care and treatment.

86.     The defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, expressly and impliedly warranted to the plaintiff's decedent that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

**87.**    On or about November 2021 through October 2022, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty, which breach resulted in the death of William J. Howard.

**88.**    The death of William J. Howard and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, the United States of America's breach of express and implied warranties.

**89.**    The plaintiff did not discover, nor could he have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after May 26, 2023, which is less than two years from the presentment of his administrative claim on March 19, 2024.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## COUNT VI

**90.**    The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

**91.**    This action is brought to recover for the conscious pain and suffering of the decedent, William J. Howard.

92.    As the direct and proximate result of the breach of express and implied warranties by the defendant, the United States of America, by its agents, servants, or employees, the plaintiff's decedent, William J. Howard, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, in an amount to be determined by a jury, together with interest and costs.

## COUNT VII

93.    The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

94.    On or about November 2021 through October 2022, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

95.    On or about November 2021 through October 2022, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff's decedent.

96.    On or about November 2021 through October 2022, the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, did not inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent.

97.    If the defendant, the United States of America, by its agents, servants, or employees, including but not limited to the VA providers, had informed the plaintiff's decedent of the

alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff's decedent, neither the plaintiff's decedent nor a reasonable person in his position would have elected the defendant's choice of treatment.

98.    The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff's decedent and a reasonable person in his position as to whether to undergo the defendant's choice of treatment.

99.    The death of William J. Howard and the damage to his estate, including, but not limited to his funeral and burial expenses, were the direct and proximate result of the defendant, the United States of America, by its agents', servants', or employees' failure to obtain the informed consent of the plaintiff's decedent.

100.    The plaintiff did not discover, nor could he have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after May 26, 2023, which is less than two years from the presentment of his administrative claim on March 19, 2024.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, for the above-described wrongful death and damage to the estate, together with interest and costs.

## <u>COUNT VIII</u>

101.    The plaintiff repeats and reavers all of the allegations contained in all of the above Paragraphs of this Complaint, as if expressly rewritten and set forth herein.

102.    This action is brought to recover for the conscious pain and suffering of the decedent, William J. Howard.

103.    As the direct and proximate result of the defendant, the United States of America, by its agents', servants', or employees' failure to inform the plaintiff's decedent of the alternatives to and risks and potential consequences of the defendant's treatment, the decedent, William J. Howard, was caused to suffer consciously up to and until his time of death.

WHEREFORE, the plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, prays judgment against the defendant, the United States of America, in an amount to be determined by a jury, together with interest and costs.

### DEMAND FOR JURY TRIAL

The plaintiff, Chad M. Howard, as duly appointed Personal Representative of the Estate of William J. Howard, hereby demands a jury trial on all issues so triable.

Respectfully submitted,
The plaintiff,
By his attorneys,

/s/ *Adam R. Satin*

_____
Adam R. Satin, BBO# 633069
Lynn I. Hu, BBO# 690823
Lubin & Meyer, P.C.
28 State Street, 40th Floor
Boston, MA 02109
(617) 720-4447
asatin@lubinandmeyer.com
lhu@lubinandmeyer.com